We have four cases on the calendar this morning, two of which will be argued, and I'm advised that all counsel are present. So we'll begin to hear argument on our first case, number 20-1385, Deerbrook Insurance Company v. Lyubov Mirvis. We have Mr. Watkins to begin. Thank you, Your Honor. Adam Francois Watkins for appellants non-parties Lyubov Mirvis and Tatiana Mirvis. May it please the court. This appeal presents the narrow legal question of whether the now-replaced New York Fraudulent Conveyances Act permitted the district court to strip a non-debtor spouse of her right of survivorship as a remedy for a fraudulent conveyance. The law does not permit such remedy. The touchstone of the Fraudulent Conveyances Act is simply to restore the situation to the status quo ante, typically as here. I'm sorry, Mr. Watkins. May I interrupt you just for a second? This is obviously a state law question. It's one that the New York State Court of Appeals has not decided. But is the thought that they don't care because the statute has now been amended? Your Honor, no party has asked for the question to be certified. That is certainly an option typically in cases like this, as of course you're aware. It's not something necessarily that appellants would oppose. However, we do think that there is sufficient authority within the New York State case law, notwithstanding the two unsupported district court decisions cited by the district court here, for this court to be confident that the Court of Appeals would decide the way that we recommend. Furthermore, the Court of Appeals' affirmation in the Finnegan v. Hume case should be considered binding on this court, because it was a decision of the Court of Appeals and its affirmation of the appellate division case. The point that we are making, the fact that the Fraudulent Conveyances Act cannot either increase or decrease the property rights of a non-debtor spouse, that point was vital to the affirmation by the Court of Appeals. So our position is that- I think what occurred to me is both you and your adversary are both claiming that the new law indicates your position as to the meaning of the old law. And that would seem to be something that the state court would be well-situated to decide. But I wasn't sure if the thought was that, well, they're not looking backward and they don't care and it's not going to affect enough cases, so there's no point in bothering them. What are your thoughts? My thoughts are, as we've said, the change in law, our position is that, if anything, it shows that the old law did not have equitable principles embodied in it, while the new law does. And that represents change. The legislative history bears that out. Of course, the best evidence is the text of the law itself, of the old law and how it's been interpreted. And that is very straightforward, that there's no need to resort to the sort of legislative history of the law that replaced it to reach the clear result here. Let me ask one question if I might. Judge Jacobs, please go ahead. Would that law in any event control this case? The old law? The new law. No, Your Honor, the new law applies only to transfers that occurred after, I believe it's April 20th of last year. Thank you. Mr. Watkins, I understand that you're relying on Murkoff as the best expression of what the basis for predicting what the New York Court of Appeals would, how it would apply the earlier statute. But it also seems to be the case that some New York courts have held that punitive damages can be awarded in cases involving fraudulent conveyances where the conducts were particularly gross and wanton. And if that's so, and that's not provided in the statute, why doesn't that suggest that the court is also entitled to award equitable relief here? Well, Your Honor, on punitive damages, it's first worth noting that the New York Court of Appeals in the James v. Powell case, which we cite in our reply, has squarely held that punitives are simply not available under the Fraudulent Conveyances Act. Here, punitive damages were not sought at any point by Allstate, and they were not awarded by the district court. The district court specifically described its damages as non, or its rescission of Mrs. Mervis's right of survivorship as non-punitive. It is true that there is a tiny minority of cases, exactly two, that awarded punitive damages, but it was first only against the debtor, never against a non-debtor spouse or any other non-debtor, and only for tortious conduct that was not just gross and wanton, but was actually distinct from fraudulent conveyance. In both of those cases, we're talking about Enri Cobler and Keene v. Keene, there was perjury, and one that was outright theft, where the ex-husband pretended that he was president of the company that his ex-wife was actually president. Nonetheless, doesn't that suggest that the court might have equitable powers that aren't explicitly recognized by the statute? Well, Your Honor, I mean, the other thing is that, first, our answer is, there might be a small suggestion of that, but the touchstone of the statute is to bring the parties back to the status quo ex ante. Even in those distinct minority cases with the punitive damages, one of the courts noted that it was compensatory in nature, which brings in question the entire notion of punitive damages and makes it more like the money damages cases that are awarded when it's impossible to return the property to the status quo ante. Furthermore, the notion of punitive damages, the notion of destroying a property right as a form of punitive damages, I'm not aware of a case that does that, and all state has not brought up one. Judge Chen, in fact, disclaimed that this was punitive at all, didn't she, in making her ruling? Specifically, yes, Your Honor. Judge Chen said it was not punitive. So I think that the punitive damages cases are distinct outliers, contradict the Court of Appeals' direct statement in the James case, and even more don't apply because these are not punitive damages. They were never sought nor awarded. Thank you. Thank you, Your Honor. As I said, the touchstone of the entire case law throughout all the New York cases, and even the majority of federal district court cases, is simply the remedy is rescission. It's to undo the fraudulent transfer. The only time there is ever money damages or anything approximating equity coming into the situation is where it is impossible, either because the property has been resold to a bona fide purchaser or because it's been deprecated. It's only where it is impossible to return to the status quo ante that damages are available. Thank you very much. You've reserved three minutes for rebuttal. Thank you, Your Honor. We'll hear from Mr. I'm sorry, I don't know how to pronounce your last name. Nappany, Your Honor. Nappany. Mr. Nappany, please. Thank you, Your Honor. Good morning, and may it please the court. There's a fundamental difference between the way appellant and appellee described the issue before this court, and this difference is crucial. Appellant describes in its reply brief the issue as whether New York law permits the destruction of a non-debtor spouse's tenancy as punishment for her husband's fraudulent conveyance. That description misstates the issue. The real issue before the court is whether a non-debtor spouse who actively, knowingly, and in bad faith participates in egregious conduct to avoid her family's payment of a $45 million fraud judgment can subject her to equitable remedies that are proportional to her conduct to achieve a full measure of recovery. Go ahead, Judge Jacobs, please. But you would concede that her conduct, egregious or not, is entirely with respect to the transfer itself and the fraudulent nature of it. No, Your Honor, we would not, and the reason that we don't is because, well, you're correct that Mr. Mervis's wife was not uninformed, incompetent, or a passive player in the particular fraudulent scheme. And indeed, the evidence shows that she directed her daughter to participate in this transaction along with her husband. But the reason it's more than that is, first of all, you're talking about three separate conveyances. May 20, 2013, October 20, 2013, and May 11, 2015. Three separate incidents in which there were specific fraudulent conveyances or conveyances in which the wife actively participated in suspicious timing. And beyond those conveyances, it should not be lost upon this Court, and Judge Kuo and Judge Chen relied on this, that these actions were just one piece in the Mervis family multi-year orchestrated scheme to avoid payment on the judgment. Let me interrupt for just a minute, though. I mean, even if we all agree, as seems, you know, the record seems to establish quite clearly that Lyubov Mervis's actions were deliberate and wanton and egregious and fraudulent. Nonetheless, she was not a debtor on the judgment initially. But more importantly, it does seem that the prior debtor and creditor law, as interpreted by the Second Department and approved by the Court of Appeals, doesn't grant the court the freewheeling kind of equitable authority to grant equitable relief of the kind that the new statute explicitly does. And so I'm having difficulty finding authority in the old law for the remedy that was provided here. And could you help me out with that, please? Sure, Your Honor. And I think there are a couple of questions embedded in there, so let me try and address them all. First of all, I think there's a difference between the non-debtor spouse's actions being just in the context of the actual conveyance, but also much broader than that. As the record reflects, avoiding transfer tax payments, engaging in voidable court orders, putting in demonstrably false affidavits. If you look at all this, what Judge Chin ruled was that these actions were taken as part of a persistent and pernicious campaign by Mervis and his family to avoid the judgment. So it's not just one instance, and I think there are exceptions to this rule. If you look at Hallmark… I'm going to interrupt again because I really want you to focus. I'm sorry if I asked a compound question. But even acknowledging all the terrible things that she did to avoid paying the judgment, I still am having difficulty locating the authority for the court to take that into account in imposing the relief that it did. I don't think that there's anything in the statutory scheme, which is I think what Your Honor is referring to, that precludes the remedy granted. The DCL is a remedial statute. It is to be construed liberally under the law. And significantly, it does not contain any preclusive language or language that says these are the only remedies that can be applied. And to construe the DSL as being so limited would contravene decades of case law in New York, at least three appellate departments establishing the ability of the courts to basically fashion equitable… But weren't those three appellate department decisions based in situations where it was impossible to restore the status quo ante, that the property had been deteriorating and so on? Circumstances are fairly different from here. I'm sorry, I think you've hit mute. I don't know how that happened. But some were, but some weren't. And the answer is if you look at the New York case, the Hallmark case, for instance, and in the Clarkson case, those were not situations for that. And I think, you know, the Blakesley case, for instance, out of the first department, you know, talked about equitable remedies. But look, Your Honor pointed to the DCL amendment. And I don't think the DCL amendment changes the analysis in any way. In fact, it supports it. The stated purpose of the amendment, and my worthy adversary, you know, talks about the law being changed. But it's not really been changed because the stated purpose of that amendment was to, quote, maintain the basic principles of New York's longstanding law. And that means it's not changed. It's being maintained and confirmed on its face that the remedies would be subject to applicable principles of equity. But what about Section 193, the statutory canon of construction that says when the legislature affects a different statute, it means to make a substantive change? But I would also point out, Your Honor, to the case law that says that when the legislature does impose a new statute or an altered statute, that it also has to understand and is cognizant of the existing law that is already in place. And nowhere in that statute do they say, no, we are overruling. We are changing. You know, the law is stated in Clarkson or in Hallmark. So I think the answer is that it talks about maintaining the longstanding law. And the longstanding law was that there are situations where the conduct is so egregious and whether it be punitive damage or removing the tenancy by the entirety survivorship rights, that there are instances where that can be applied. Let me ask you about that, because you just said it's not just egregious, it's so egregious. And I think most of what we've been saying, I've been assuming that Ms. Mervis acted in an evil way. But if you look at it another way, everything she did was designed to preserve the marital property, which was hers by the entirety. And if she learned it in the law, she would have known that she didn't have to do any of this, that the insurance company, the banks, could not break her interest by the entirety. And she wouldn't have done anything. So I'm not sure I see this as the most egregious case imaginable. Well, whether it's the most egregious case imaginable or not, I can't say. But I will say the conduct itself is more than just a passive, uninformed, incompetent spouse. And not only does it deal with the three separate instances of suspicious timing, suspicious transfers. Look, the bottom line is she did all this stuff. Whether she had to do it or not is another issue. Isn't that like somebody who sneaks up and steals their own property? No, because here you've got a third party that's being harmed. And in essence, as was reflected in the Clarkson case, if the court were to justify or to uphold the actions here, essentially you would be allowing the precise action that the fraudulent conveyance was supposed to accomplish if Mrs. Mervis outlives her husband. And that, to me, is an inequitable result that should be avoided. And the irony here, Your Honor, is here's a situation where Mrs. Mervis and Mr. Mervis actually tried to convey their interests to their daughter. Which by doing that, essentially under the law, vitiates the tenancy by the entirety. And now are claiming, oh, well, I didn't mean to do that. I want to reverse that. And now they're going to get the benefit, even though they didn't do what they were supposed to do. And I would say one last point, if I may. Thank you very much, Your Honor. If the court is having some difficulty with respect to the aspect of what is the New York law in the sense of Marine Midland versus we think Marine Midland is distinguishable. But it's perfectly appropriate for this court to send this and certify it to the New York Court of Appeals. You've done it before. It doesn't have to be requested by any party before. It could be requested at oral argument. And we believe Marine Midland is distinguishable because it doesn't have the extent of the egregious conduct here. But if your honors do want to certify it, that is a result that may be appropriate. Thank you very much. Thank you for your time this morning, Your Honor. Mr. Watkins, you've reserved three minutes for rebuttal. I think you're on mute. Classic. Thank you, Your Honor. I just wanted to start with where the adversary ended. And he said that the difference here is the third party is being harmed, presumably referring to all state. But, Your Honor, that's simply not true. If it were true, then it would be a difference. But the touchstone of the law is simply to return to the status quo. And all state, if this had never happened, all state would be in the same position. And that's why. I mean, I assume there are costs associated with undoing the fraudulent conveyance. Right, Your Honor. Yet there may be legal costs, attorney's fees. That's not something that's under appeal right now. But I mean, hypothetically, is that equitable relief that would be available to all state to account for this misconduct by Mrs. Hypothetically, there in order to return the status quo ante, there could be some sort of cost imposed. Again, that's not before the court here, but that's something that would be within the status quo ante, I believe. And the other thing I wanted to bring up is the case law on this actually is clear. And as we are finding, it's not just Murkoff, which is, of course, directly on point. And as the district court acknowledges, the district court just wasn't swayed and thought that, you know, maybe these other cases present a reason to reject Murkoff. But as this court stated in VSV Muhammad, which is a case from 2010 and has stated a number of times when an intermediate appellate court has decided and there's no dispute in New York courts, all New York courts are ruled the same way that that must be followed unless there is compelling evidence that the court. Let me ask. I mean, the district court recently was very offended by the actions taken here. The repeated attempts at fraud on the court and fraud on the creditor and so on. I guess your position is that that may be, but this isn't the remedy that's available. Are there other remedies that are available? Could the district court sanction Ms. Dubois-Mirvis for the fraud she attempted to perpetrate? Your Honor, under the Fraudulent Conveyances Act itself, I don't believe so. As the Court of Appeals said in the Janow case that we cite in our reply brief, the degree of misconduct is simply not relevant under a Fraudulent Conveyances Act, under the former law that governs here. There may well be other remedies, just common law fraud. I'm not sure, but it's not something that was decided below and not something before the court here. Thank you. Yeah, I mean, I just wanted to end on that Janow case, just highlight it from the reply brief, that the degree of misconduct is not what governs here. Of course, both the district court and my adversary have talked about the underlying fraud, but that's not at issue here. The issue is what specifically does the Fraudulent Conveyances Act allow, and it does not allow the remedy imposed below of striking Ms. Mirvis' right of survivorship. Thank you both. Thank you very much. We have the arguments, and we will reserve decision. Thank you, Your Honor. Thank you.